# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EMERY YOST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  12-cv-8704 |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Emery Yost has worked for Defendant Chicago Park District (the "Park District") as a music instructor for nearly twenty-five years.  In 2010, Yost interviewed for, but ultimately did not receive, promotions to two supervisory positions within the Park District. Yost claims that the Park District passed him over for the promotions in retaliation for filing a reverse race discrimination charge against the Park District.  Before the Court is the Park District's motion for summary judgment on Yost's claim for violation of Title VII of the Civil Rights Act of 1964.  (R. 26.)  For the following reasons, the Court grants the Park District's motion for summary judgment and dismisses Yost's claim with prejudice.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).  Local

Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). The nonmoving party then must "file a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing L.R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) further directs the nonmoving party to submit a separate statement of additional facts, if any, that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

Yost and the Park District both stated that they lacked sufficient information to respond to certain proposed statements of fact. (*See* R. 40, Pl. L.R. 56.1(b)(3) Resp. ¶¶ 46, 64; R. 44, Def L.R. 56.1(b)(3) Resp. to Add'l Facts ¶¶ 2, 5.) This is not a proper ground to dispute a statement of fact. *See* Local Rule 56.1(b)(3)(B) (requiring "in the case of any disagreement" with the moving party's statements of fact "specific references to the affidavits, parts of the record, and other supporting materials relief upon" as a basis for the disagreement); *Fredricksen v. United Parcel Serv. Co.,* No. 06 C 2285, 2008 WL 904881, at *2 n.3 (N.D. Ill. Mar. 31, 2008) ("Under the Local Rules of the Northern District of Illinois, a summary judgment response claiming insufficient information to admit or deny is improper and constitutes an admission."); *see also Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material."). The Court, therefore, deems any facts to which the parties stated that they lacked sufficient information to respond as admitted.

Additionally, Yost objected to several of the Park District's statements of undisputed facts because they presented subjective scoring or subjective considerations as fact. (*See, e.g.,*

Def. L.R. 56.1 Stmt. ¶¶ 43, 53-56, 58, 60-61.)  Yost's objections are without merit.  The

statements of fact at issue concern the ratings and comments interviewers gave to Yost and other

candidates who applied for the open supervisor positions.  Although the interviewers based their

judgments on their subjective opinions of the candidates, the ratings and comments they

provided on their Interview Rating Forms are verifiable facts.  Yost does not dispute that the

Park District's statements of fact accurately reflect the rating scores that the interviewers

assigned to him and other candidates; he simply argues that the interviewers underrated his

qualifications and overrated the top-scoring candidates' qualifications in determining those

ratings.  Yost's objections, therefore, are overruled.

## II.     Relevant Facts

The following facts are undisputed unless otherwise noted.  The Park District is a local

public entity that manages over 400 parks, playgrounds, and playlots throughout Chicago.  (Def.

L.R. 56.1 Stmt. ¶ 1.)[1]  The Park District employs approximately 1,600 full-time staff members

and 1,250 part-time staff members to supervise its parks and playgrounds, maintain the facilities,

and lead park patrons in various recreational activities.  (*Id.* ¶ 3-9.)  Plaintiff Emery Yost has

worked for the Park District since 1989.  (*Id.* ¶ 20.)

In May 2010, Yost filed employment discrimination charges against the Park District

with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois

Department of Human Rights ("IDHR").  (*Id.* ¶ 31.)  Yost alleged that the Park District did not

promote him to playground supervisor at Cragin Park because of his race (white) and national

---

[1] Citations to "Def. L.R. 56.1 Stmt." refer collectively to the Park District's Local Rule 56.1(a) Statement of Facts (R. 26-2) and Yost's Local Rule 56.1(b)(3)(B) Response (R. 41).  Similarly, citations to "Pl. L.R. 56.1 Stmt. of Add'l Facts" refer collectively to Yost's Local Rule 56.1(b)(3)(C) Statement of Additional Facts (R. 40) and the Park District's Response (R. 44).  For clarity, the Court will use this citation form only when the fact at issue is undisputed.

origin (United States). (*Id.*) According to Yost, the Park District passed him over for various playground supervisor positions that it instead offered to less qualified non-white applicants. (*See* R. 13, Am. Compl. ¶¶ 4-5.)

Six months later, in November 2010, Yost applied for promotions to open supervisor positions at Smith Park and Bosley Playground Park ("Bosley Park"). (Def. L.R. 56.1 Stmt. ¶¶ 33-34, 51-52.) Yost did not receive either promotion. (*Id.* ¶¶ 43, 61.) According to the Park District, it promoted candidates more qualified than Yost to fill the vacant positions. (*Id.* ¶¶ 41, 60; *but see* Pl. L.R. 56.1(b)(3) Resp. ¶¶ 41, 60; Pl. L.R. 56.1 Stmt. of Add'l Facts ¶¶ 6-7.) Yost, however, claims that the Park District failed to promote him in retaliation for the employment discrimination charges he had filed against the Park District in May 2010. (*See* Am. Compl. ¶ 14.)

## A.     The Park District's Hiring Practices

The Park District follows an established set of procedures to fill open park and playground supervisor positions.[2] (Def. L.R. 56.1 Stmt. ¶ 13.) The Park District's human resources department posts notice of a bid application for the open position. (*Id.*) The notice provides a job description, location and starting pay for the position, information concerning the application process, and the minimum qualifications applicants must possess. (*Id.*) After the Park District receives the bid applications for the position, Human Resources completes a two-stage evaluation of the applicants. (*Id.* ¶ 14.) First, Human Resources determines which applicants meet the minimum qualifications provided in the job notice. (*Id.*) Second, Human Resources arranges interviews with all qualifying candidates. (*Id.*)

---

[2] The Park District's collective bargaining agreement with the Service Employees International Union ("SEIU") requires the Park District to hire only members in good standing of SEIU-Local 73 as playground supervisors. (*See* Def. L.R. 56.1 Stmt. ¶ 12.)

At least two Park District employees—one member of Human Resources and one employee who has knowledge of the vacant position and its responsibilities—conduct the interviews. (*Id.* ¶ 15.) The interviewers ask every candidate the same questions. (*Id.* ¶ 17.) After each interview, the interviewers independently complete an Interview Rating Form scoring the candidate on a scale of one to five (five being the highest) in various categories, including "Understanding of the Position," "Prior Work Experience," and "Overall Qualifications for the Position." (*Id.* ¶¶ 16-18.) After interviewing all candidates for the position, the interviewers rank the candidates based on their final rating scores. (*Id.*)

Barring an unforeseen problem or a last-minute withdrawal, the Park District offers the position to the top-scoring candidate as long as he or she had an average final rating score of at least 3.0 ("Meets Requirements"). (*Id.* ¶ 19.) If the top-scoring candidate declines the job offer, the Park District offers the position to the candidate with the second highest score. (*Id.*) If no candidate receives a final rating score of 3.0 or more, the position remains open and the Park District repeats the process. (*Id.*)

### B.      Yost's Qualifications

Yost has a Bachelor of Arts in Music and Communications, Arts Entertainment, and Media Management from Columbia College, and a Master of Arts in Managing, Developing, Assessing, and Presenting Inclusive Music Programs from DePaul University. (Pl. L.R. 56.1 Stmt. of Add'l Facts ¶ 2.) Yost began working for the Park District in 1989. (Def. L.R. 56.1 Stmt. ¶ 20.) Before working for the Park District, Yost taught music to children from 1986 to 1988 and was a lifeguard for the Boy Scouts from 1981 to 1982. (Pl. L.R. 56.1 Stmt. of Add'l Facts ¶ 4.)

Yost works for the Park District primarily as a music instructor. (*Id.* ¶ 1.) Yost also has

organized youth activities and supervised day camps and other programs for the Park District.

(Def. L.R. 56.1 Stmt. ¶ 20.) On occasion, Yost has served as a temporary supervisor at various

parks when the appointed supervisor was absent or unavailable. (Pl. L.R. 56.1 Stmt. of Add'l

Facts ¶ 3.) He has coached athletic activities, including floor hockey, basketball, and ice skating,

and has created inclusive music programs for children with developmental disabilities. (*Id.*) He

also has participated in Mayor's Cup activities, worked with boards and councils to create

budgets for Park District programs, initiated work orders, checked grounds and fields operated

by the Park District, and wrote several grant proposals. (*Id.*) Outside of the Park District, Yost

teaches music at Columbia College and works as a licensed real estate agent. (Def. L.R. 56.1

Stmt. ¶ 20.)

## C. The Park Supervisor Position at Smith Park

The Park District issued a bid notice for current employees to apply for the open

supervisor position at Smith Park in November 2010.[3] (Def. L.R. 56.1 Stmt. ¶ 51.) After

receiving bid applications, Human Resources identified seven candidates, including Yost, who

met the minimum qualifications for the position. (*Id.* ¶ 52; *but see* Pl. L.R. 56.1(b)(3) Resp. ¶ 52

(denying that Melody Mitchell "met the minimum qualifications identified in the bid

application").) On November 15 and 18, 2010, Cynthia Rosario, Area Manager for the Park

District's Central Region, and Michelle Gage, a Human Resources representative, interviewed

those seven candidates. (Def. L.R. 56.1 Stmt. ¶¶ 47, 50, 53.) Each interview lasted

---

[3] A dispute exists regarding whether the open position at Smith Park was for "park supervisor" or
"playground supervisor." (*See* Def. L.R. 56.1 Stmt. ¶ 23; Pl. L.R. 56.1(b)(3) Resp. ¶ 23.) Because Yost
disputes that the open position was for a playground supervisor and because the Park District's own
statements are inconsistent on this issue, the Court assumes for purposes of this summary judgment
motion that the open Smith Park position was for park supervisor.

approximately 30 minutes, and the interviewers asked each candidate the same set of questions. (*Id.* ¶ 53.) Rosario and Gage independently completed Interview Rating Forms for each candidate, and after completing all seven interviews, they ranked the candidates based on the candidates' average final rating scores. (*Id.*)

Rosario and Gage interviewed Yost for the Smith Park supervisor position on November 15, 2010. (*Id.* ¶ 58.) Rosario gave Yost a score of 3, meaning "meets requirements," in all categories, and noted in the Interview Rating Form that Yost was "[h]ighly energetic" and had "[s]trong music programming ideas." (R. 26-5, Aff. of Cynthia Rosario at Ex. C-2.)[4] Yost received an average final rating score of 3.33 out of 5, the third-highest score out of the candidates interviewed. (*Id.*)

Melody Mitchell received the top score among the candidates—a 4.00 out of 5. (Def. L.R. 56.1 Stmt. ¶ 56.) Mitchell began working for the Park District in 1996. (*Id.* ¶ 56.) She had worked as a recreation leader from 1996 to 1998, a physical instructor from 1999 to 2005, and a playground supervisor from 2005 until the time of her interview in November 2010. (*Id.*; *see also* Aff. of Cynthia Rosario at Ex. C-4 (Mitchell's resume).) Rosario noted on her Interview Rating Form that Mitchell was "[v]ery passionate about programming," had "[h]igh energy and [was] very knowledgeable," and had "[o]ver 5 [years] of supervisory experience and advisory council interaction." (Aff. of Cynthia Rosario at Ex. C-3.) The Park District offered the Smith Park supervisor position to Mitchell, as the top-ranking candidate, and she accepted the position. (Def. L.R. 56.1 Stmt. ¶¶ 60, 63.)

According to the Park District, Mitchell was the most qualified candidate for the position because "she had experience as a Playground Supervisor and extensive experience with and

---

[4] The parties did not include Gage's Interview Rating Forms for Yost or other candidates in their summary judgment submissions.

understanding of park operations." (*Id.* ¶ 60.) Furthermore, Mitchell "had experience with arts and crafts and supervising children during various other sports and activities." (*Id.*) The Park District noted that Yost, on the other hand, had experience "mostly in the music area" and did not have as extensive experience supervising children as Mitchell. (*Id.* ¶ 61; *but see* Pl. L.R. 56.1(b)(3) Resp. ¶¶ 60-61.) Yost argues that he too had playground supervisor experience, noting that he had filled in as a playground or park supervisor on various occasions during his employment with the Park District, and he denies that he had less experience supervising children than Mitchell. (Pl. L.R. 56.1(b)(3) Resp. ¶¶ 60-61; *see also* R. 39, Pl. Resp. Br. at 5-7.) Yost claims that his qualifications, "evaluated objectively, were superior to Mitchell's" because he had both a bachelor's degree and a master's degree, whereas Mitchell had not yet earned her bachelor's degree at the time of her interview. (Pl. L.R. 56.1(b)(3) Resp. ¶ 61; *see also* Pl. Resp. Br. at 5-7.)

**D.      The Playground Supervisor Position at Bosley Park**

The Park District posted a bid notice for current employees to bid for the position of playground supervisor at Bosley Park in November 2010. (*Id.* ¶ 33.) After receiving the bid applications, Human Resources identified fifteen candidates, including Yost, who met the minimum qualifications for the position. (*Id.* ¶ 34.) Leo Gonzalez, a Human Resources analyst, and Michael Hixenbaugh, an area manager, interviewed those fifteen candidates on November 19 and 22, 2010. (*Id.* ¶¶ 34-35.) Each interview lasted about 30 minutes, and the interviewers asked each candidate the same set of questions. (*Id.* ¶ 35.) After evaluating the candidate's interviews and application materials, Gonzalez and Hixenbaugh assigned a final rating score to each candidate and then ranked the candidates based on the sum of their final rating scores. (*Id.* ¶ 35.)

Gonzalez and Hixenbaugh interviewed Yost for the playground supervisor position at Bosley Park on November 22, 2010. (*Id.* ¶ 39.) Gonzalez gave Yost a final rating score of 2.66, and Hixenbaugh gave him a final rating score of 3.00. (*Id.*) Gonzalez assigned Yost a score of 3 for "Understanding of the Position" and "Overall Qualification for the Position" and a 2, meaning "slightly below requirements," for "Prior Related Work Experience." (*See* R. 26-4, Aff. of Leo Gonzalez at Ex. B-2.)[5] Gonzalez commented on Yost's Interview Rating Form that Yost's background was "in music mostly." (*Id.*) Yost's total score of 5.66 out of 10 ranked him eleventh of the fifteen candidates interviewed for the position. (Def. L.R. 56.1 Stmt. ¶ 39.)

Sean Ortiz received the top-ranking score among the candidates for the Bosley Park supervisor position with a score of 8.66 out of 10. (*Id.* ¶ 37.) Gonzalez gave Ortiz a final rating score of 4,[6] and Hixenbaugh gave him a final rating score of 4.66. (*Id.*) Ortiz had worked for the Park District as a physical instructor at various parks from 2005 to 2010 and as a recreational leader or seasonal recreational leader from 2000 to 2005. (*Id.*) His duties as a physical instructor included developing and implementing preschool classes, revitalizing weekend sports programs, and facilitating family sports workshops. (*Id.*) In December 2010, Ortiz earned a Bachelor of Arts from Northeastern Illinois University with a major in Human Resource Development and a minor in Recreation Management. (*Id.*) Ortiz also speaks fluent Spanish. (*Id.*) The Park District offered the Bosley Park playground supervisor position to Ortiz, as the top-ranking candidate, and he accepted the offer. (*Id.* ¶¶ 41, 45.)

---

[5] The parties did not include Hixenbaugh's Interview Rating Forms for Yost or other candidates as part of their summary judgment submissions.

[6] Gonzalez gave Ortiz a score of 5, meaning "far above requirements," for "Understanding of the Position" and "Prior Related Work Experience" and a 4, meaning "slightly above requirements," for "Overall Qualification for the Position." (Aff. of Leo Gonzalez at Ex. B-3.) Although these scores average to a score of 4.66 out of 5, Gonzalez's Interview Rating Form lists Ortiz's final rating score as 4. (*Id.*)

According to the Park District, Ortiz was the most qualified candidate for the playground supervisor position because he had "the broad and varied experience that the Playground Supervisor position required, including experience with park operations . . . . [and] a wide knowledge of the recreation programs of the Park District, including experience organizing and leading various children's sports programs." (*Id.* ¶ 42.) Furthermore, Ortiz's "Human Resources bachelor's degree and Recreation Management minor made him a strong candidate as well." (*Id.*) The Park District contends that Yost was less qualified than Ortiz because Yost's experience was "primarily in music," he "did not have the extensive knowledge of park operations that Ortiz had," and he "did not have the type of educational background specifically geared toward the position of Playground Supervisor." (*Id.* ¶ 43.) Yost claims, however, that Gonzalez and Hixenbaugh overrated Ortiz and intentionally underrated Yost in retaliation for Yost filing a discrimination charge against the Park District with the EEOC. (*See* Pl. L.R. 56.1(b)(3) Resp. ¶¶ 42-43.)

### E.    Yost's Retaliation Charge with the EEOC and IDHR

After the Park District failed to promote Yost to the Smith Park and Bosley Park supervisor positions, Yost filed a retaliation charge against the Park District with the EEOC and IDHR (Charge No. 2011CF1961). (*Id.* ¶ 11 & Ex. 1.) Yost claimed that the Park District did not promote him to those positions in retaliation for the employment discrimination charge Yost had filed against the Park District in May 2010. (*Id.* at Ex. 1.) The EEOC issued a Dismissal and Notice of Rights letter on July 30, 2012. (*Id.* ¶ 13 & Ex. 1.) Yost alleges—and the Park District does not dispute—that he received the EEOC letter on August 2, 2012 (*id.* ¶ 13), and he timely filed this suit within 90 days of receiving the EEOC letter. *See* 42 U.S.C. § 2000e-5(f)(1).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, the facts "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (quotation omitted). The nonmovant "must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012).

**ANALYSIS**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee or job applicant "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a). To avoid summary judgment on a Title VII retaliation claim, a plaintiff may use either the direct or indirect method of proof. *See Northington v. H & M Int'l,* 712 F.3d 1062, 1065 (7th Cir. 2013); *Brown v. Advocate So. Suburban Hosp.,* 700 F.3d 1101,

1104 (7th Cir. 2012). Under the direct method of proof, the plaintiff must show that "(1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse employment action taken by the employer; and (3) there was a causal connection between the two." *Northington,* 712 F.3d at 1065. Under the indirect method of proof, the plaintiff must show that he "(1) engaged in statutorily protected activity; (2) met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity." *Id.*

Yost attempts to prove his Title VII retaliation claim using the direct method of proof. (*See* Pl. Resp. Br. at 4-8.) The Park District admits the first two elements of Yost's claim—(1) that Yost engaged in a statutorily protected activity in filing an employment discrimination charge with the EEOC in May 2010 and (2) that the Park District's failure to promote Yost to the Smith Park and Bosley Park supervisor positions constituted "adverse employment action[s]." (*See* R. 26-1, Def. Mem. at 7-8.) The Park District argues, however, that Yost has no evidence to prove that a causal connection exists between his filing of the employment discrimination charge and the Park District's failure to promote him. (*Id.* at 8-12.) Rather, the Park District argues, it did not select Yost to fill the Smith Park and Bosley Park supervisor positions because he was less qualified than the candidates to whom the Park District offered those positions. (*Id.*)

To prove the causation element of his Title VII retaliation claim, Yost must prove but-for causation. *University of Tex. Sw. Med. Ctr. v. Nassar,* --- U.S. ---, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013). That is, he must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*; *see also Hobgood v. Illinois Gaming Bd.,* 731 F.3d 635, 643 (7th Cir. 2013). "This may be done via direct evidence, which would entail something akin to an admission by the employer ('I'm firing you

because you had the nerve to accuse me of sex discrimination!') . . . . [or] [i]t also may be done

by presenting a 'convincing mosaic of circumstantial evidence' that would permit the same

inference without the employer's admission." *Coleman v. Donahoe,* 667 F.3d 835, 860 (7th Cir.

2012) (citations omitted); *see also Hobgood,* 731 F.3d at 643-45.  Evidence commonly used to

establish a "convincing mosaic" includes "(1) suspicious timing; (2) ambiguous statements or

behavior towards other employees in the protected group; (3) evidence, statistical or otherwise,

that similarly situated employees outside of the protected group systematically receive better

treatment; and (4) evidence that the employer offered a pretextual reason for an adverse

employment action." *Hobgood,* 731 F.3d at 643-44.  These categories of evidence, however,

"are not exclusive, nor are they a set of prongs of a circumstantial evidence 'test.'" *Id.* at 644.

To determine whether a plaintiff has presented sufficient evidence to create a "convincing

mosaic" of retaliation, the court must consider the individual "bits and pieces" of evidence

presented by the plaintiff in context and as a whole.  *See id.* at 644.

Yost attempts to prove the causation element of his retaliation claim using the

"convincing mosaic" method of proof.  (*See* Pl. Resp. Br. at 4.)  Yost argues that he can prove

that the Park District's stated reason for not promoting him to the Bosley Park and Smith Park

supervisor positions—*i.e.,* that Yost was not the most qualified candidate—was pretext through a

comparison of his qualifications with the qualifications of the two candidates who ultimately

received the positions, Sean Ortiz and Melody Mitchell. (*Id.* at 4-8.)  Yost claims that the

difference in his credentials and the credentials of Ortiz and Mitchell show that the Park District

interviewers intentionally underrated Yost and overrated Ortiz and Mitchell to ensure that Yost

did not receive the promotions.  (*Id.*)

13

Specifically, with respect to the Bosley Park supervisor position, Yost argues that

Gonzalez and Hixenbaugh overrated Ortiz's educational background as above requirements

because only his minor—not his major—was in Recreation Management. (*Id.* at 5.)

Furthermore, Yost claims that Gonzalez and Hixenbaugh overstated Ortiz's sports coaching

experience while improperly minimizing Yost's experience coaching basketball, floor hockey,

and ice skating. (*Id.*) With respect to the Smith Park supervisor position, Yost claims that

Rosario and Gage overrated Mitchell's qualifications because she "did not even have a college

degree completed at the time she interviewed for the position, yet she was accorded a *higher*

score than Plaintiff for overall qualifications." (*Id.* (emphasis in original).) Yost argues that his

bachelor's degree in Music and Communications, Arts Entertainment, and Media Management

and his master's degree in Managing, Developing, Assessing, and Presenting Inclusive Music

Programs should have qualified him for at least a "Slightly Above Requirements" rating in the

"Overall Qualifications" category. (*Id.* at 6.)

To create an inference of retaliation based on a difference in credentials, however, Yost

"must offer more than 'mere self-serving appraisals,' . . . or his own subjective belief that he was

as qualified as the successful applicant . . . ." *Stephens v. Erickson,* 569 F.3d 779, 788 (7th Cir.

2009) (internal quotations and citations omitted). "[W]here an employer's proffered non-

discriminatory reason for its employment decision is that it selected the most qualified candidate,

evidence of the applicants' competing qualifications does not constitute pretext unless those

differences are so favorable to the plaintiff that there can be no dispute among reasonable

persons of impartial judgment that the plaintiff was clearly better qualified for the position at

issue." *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1180 (7th Cir. 2002) (internal quotations and

citations omitted); *see also Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 813-14 (7th

Cir. 2005); *Mlynczak v. Bodman,* 442 F.3d 1050, 1059-60 (7th Cir. 2006). Put differently, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Millbrook,* 280 F.3d at 1180-81 (internal quotations and citations omitted). As the Seventh Circuit has explained,

> This makes sense because a court's role is to prevent unlawful hiring practices, not to act as a "super personnel department" that second-guesses employers' business judgments. As we have stated, no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII does not interfere. Rather, this court must respect the employer's unfettered discretion to choose among qualified candidates. If we were to allow a jury to evaluate competing credentials to determine whether the employer's assertion that it selected the best candidate was pretextual, the jury would in most cases be replacing the employer's personnel department. Yet neither the judge nor the jury is as well suited by training and experience to evaluate the qualifications for high level promotion in other disciplines as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated.

*Id.* at 1181 (internal quotations and citations omitted).

Even viewing the evidence in the light most favorable to him, Yost has failed to meet his burden of showing that his credentials were so superior to those of Ortiz and Mitchell that no reasonable person, in the exercise of impartial judgment, could have chosen Ortiz and Mitchell over him for the supervisor positions at Bosley and Smith Parks. It is undisputed that Ortiz had over a decade of experience leading children in sports activities and arts and crafts, and he had directed and coached numerous sports leagues, tournaments, camps, and other activities. Ortiz has a major in Human Resources Development and a minor in Recreation Management, and he is bilingual. While Yost also had some experience coaching sports, supervising day camps, and arranging special events, his primary role with the Park District was as a music instructor. Furthermore, although Yost attacks Ortiz's qualifications because only Ortiz's minor—not his

15

major—is in Recreation Management, neither of Yost's degrees relate to recreation management, park management, or comparable studies. In sum, Yost's qualifications for the Bosley Park supervisor position were not so clearly superior to Ortiz's qualifications that no reasonable person would have chosen Ortiz over Yost for the job. *See id.* at 1180-81.

Nor were his qualifications for the Smith Park supervisor position so clearly superior to Mitchell's qualifications that no reasonable person would have selected Mitchell over Yost for the Smith Park supervisor position. *See id.* Mitchell had five years of experience as a playground supervisor and nearly a decade of experience as a physical instructor or recreational leader for the Park District. Yost's only challenge to Mitchell's qualifications is that she had not earned her bachelor's degree by the time of her interview, yet she received a rating of "Slightly Above Requirements" for "Overall Qualifications." (*See* Pl. Resp. Br. at 6.) As Yost admits, however, the Park District stated in the job posting that it could waive the bachelor's degree requirement under certain circumstances, and Yost does not claim that Mitchell failed to meet the requirements for the waiver. (*Id.* at 5-6.) Furthermore, Yost offers no evidence to suggest that educational background was the only consideration in determining a candidate's "Overall Qualifications" rating. Indeed, the title supports the conclusion that the interviewers considered all aspects of the candidate's qualifications in determining his or her "Overall Qualifications" score—not just the candidate's educational background.

Yost's only evidence that the Park District's reason for not promoting him was pretext is his subjective belief that he was more qualified for the Bosley Park and Smith Park supervisor positions than Ortiz and Mitchell. The Seventh Circuit has repeatedly held that this is not enough to create a genuine dispute of fact to avoid summary judgment.[7] *See, e.g., Stephens,* 569

---

[7] In Yost's Local Rule 56.1(b)(3)(C) statement of additional facts, Yost states that Michelle Gage, who interviewed Yost for the Smith Park supervisor position, stated that Yost was "overqualified" for the

F.3d at 788; *Millbrook,* 280 F.3d at 1180-83; *Cichon,* 401 F.3d at 813-14; *Mlynczak,* 442 F.3d at

1059-60.  The Court, therefore, grants the Park District's motion for summary judgment.

## CONCLUSION

For the reasons explained above, the Court grants the Park District's motion for summary

judgment (R. 26), and dismisses this case with prejudice.


**DATED:  February 19, 2014**                               **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge

---

position of park supervisor.  (*See* Pl. L.R. 56.1(b)(3) Stmt. of Add'l Facts ¶ 5.)  Yost, however, did not
mention Gage's statement in his argument in opposition to the Park District's summary judgment motion.
Furthermore, Yost failed to provide the timing of Gage's statement, the context in which she made it, and
any explanation of how her statement signifies a retaliatory motive, if that is, in fact, why Yost included it
in his statement of additional facts.  Without this information, Gage's statement cannot save Yost's
retaliation claim.  *See Oest v. Illinois Dept. of Corrections,* 240 F.3d 605, 611 (7th Cir. 2001) ("[I]f the
remarks are not contemporaneous with the discharge or causally related to the discharge decision making
process, they are insufficient to create a triable issue of material fact regarding discrimination." (internal
quotations omitted)); *Cichon,* 401 F.3d at 813-14 ("The opinion of one person in isolation that Cichon
would be a 'good fit' for the job is not persuasive evidence that Cichon was the most qualified person for
the position, much less the person that would be hired.").